CHARLES H. ROBINSON and ano. er *vs.* CITY OF ST. PAUL.

March 7, 1889.

**St. Paul — Change of Street Grade — Appeal from Board of Public Works.**—The charter of the city of St. Paul allows an appeal to the district court from an assessment of damages by its board of public works for injury caused by the change of an established street grade. Chapter 7 of the Special Laws of 1885, making special provision concerning changes of grade for particular purposes, construed as not intended to except such cases from the general rule allowing such appeals.

Appeal by Charles H. Robinson and Sylvester M. Cary from an order of the district court for Ramsey county, *Simons, J.*, presiding, dismissing their appeal from an assessment by the board of public works of St. Paul.

*Flandrau, Squires & Cutcheon,* for appellants.

*W. P. Murray,* for respondent.

DICKINSON, J. Proceedings were instituted for the construction of a bridge upon Third street in the city of St. Paul, in front of the premises of the above-named appellants, for the purpose of carrying that street, by means of this bridge, over certain railroad tracks. By this means the previously-established grade in front of the appellants' premises was raised. This is the same enterprise that was the subject of consideration in *Wilkin* v. *City of St. Paul,* 33 Minn. 181, (22 N. W. Rep. 249.) An assessment of damages was made in favor of these appellants by the board of public works, pursuant to the charter. They appealed therefrom to the district court. The appeal having been there dismissed, they have appealed to this court.

The only question presented is whether the statute allows an appeal in such cases. Prior to the passage of chapter 7 of the Special Laws of 1885, hereafter referred to more particularly, the charter of the city (Sp. Laws 1874, c. 1, *subc.* 7, tit. 1, § 16) expressly allowed an appeal to the district court from an assessment of damages by the board of public works for the appropriation of property for any of the various public purposes therein stated, among which were specified various kinds of street improvements, such as the bridging, open-

ing, and altering of streets. Such appeals were declared to be triable as other civil causes, the questions to be passed upon being the jurisdiction of the board of public works, the fairness of the valuation, and the fairness and impartiality of the assessment. Title 3 of the same subchapter, (7,) which is still in force, makes specific provision concerning the change of established grades in streets. This prescribes the mode of procedure for changing an established grade, including an assessment of damages by the board of public works, from which "any party aggrieved by such assessment of damages may appeal, under the same regulations and restrictions, and in the same manner, provided in section 16 of said title 1."

In 1885, (chapter 7 of the Special Laws of that year,) an act was passed amendatory of the charter, in which (sections 3, 4, 5, and 6) it was declared that the common council should have power to construct bridges, with necessary approaches, in any street of the city, over railway tracks or other places, and to change the established grade so as to conform to the passage-way of such bridges, or so as to form approaches thereto. It declares the right of adjacent proprietors to compensation for damages from such change of grade, and provides for the assessment of such damages by the board of public works. It is then declared, in section 6, that "in ordering the construction of such bridge or bridges, or such change of grade," (that is, for the purpose of such bridges or approaches,) "no petition of property-owners or other petitions, or preliminary notice, or reference to the board of public works, or other preliminary proceedings, shall be necessary to enable or authorize the common council to act in said matter; and title 3, of chapter 7, of said charter of said city, relative to street grades,   *   *   *   shall have no application to or affect the provisions of this act." In view of this language last recited the point of this controversy is whether an intention on the part of the legislature is thereby expressed to allow no appeal from an assessment of damages, under this act of 1885, for a change of grade by means of bridges or of approaches thereto.

It is true that a right of appeal exists only by force of statute. But the general provision of the charter above referred to does distinctly give a right of appeal from an assessment of damages for a

change of the established grade of a street; and that is applicable to such a case as this, unless the restrictive language of the act of 1885, above recited, is to be construed as prohibiting such an application of the law giving an appeal, and as denying a right of appeal in the particular class of cases to which that provision relates.

It is not apparent to us that this is the necessary or proper construction of section 6. The right in question is one of very great importance to the parties affected by those proceedings; and, since it is distinctly and unqualifiedly conferred by the charter in general terms on any party whose property may be damaged by a change of the established grade of a street, and since that provision of the charter still remains in force, it should require a very plain and unmistakable expression of the intention of the legislature that a case like that in question should be excepted from that general rule, and no appeal be allowed, to justify such a construction. It is not to be considered that the legislature intended to make such an exception from a general rule of such importance, arbitrarily and without any conceivable reason, unless the terms of the law admit of no other reasonable construction. But the fact that a street grade is raised for the purpose of forming an inclined approach to a bridge certainly can afford no reason for denying an appeal from an assessment of damages to the adjacent proprietor, if such an appeal is allowed in general, when like changes of grade are made for any other purpose. Obviously, if such cases as this are excepted from the general rule prescribed by the charter in respect to the privilege of an appeal, it is wholly arbitrary, and without any reason for the distinction. It is not necessary to regard the legislature as having so intended. Observing particularly the language of section 6, above recited, the more reasonable construction of the terms declaring the non-applicability of title 3 of chapter 7 is to limit it to the proceedings of the municipal authorities. "In ordering the construction of such bridge or bridges, or such change of grade, no petition, etc., shall be necessary to enable or authorize the common council to act in said matter; and title 3 of chapter 7, etc., shall have no application to or affect the provisions of this act." The title thus referred to prescribed a mode of procedure for the change of grades in general, which was different in several respects from that

evidently contemplated by the act of 1885 in this particular class of cases. After specifying several of those things relating merely to the action of the municipal authorities, which should not be required in these cases, there is added (probably in apposition to what goes before, and in order to cover anything relating to the proceedings of these municipal authorities which might not have been included in the things specified) the clause excluding the applicability of title 3 to the provisions of this act. That is, as we think, the meaning is: the municipal authorities were not to conform, in their proceedings, to the requirements of title 3. If this is all that was intended, the right of appeal from the assessment unquestionably remains.

It may be added that from other parts of the act of 1885 it is apparent that the provision in section 6 that title 3 shall have no application to the provisions "of this act" has a narrower meaning than those words naturally import. In the prior sections of this act, several sections of the city charter are re-enacted, with some changes. Provision is there made for special assessments for changes of grades in streets generally, but no mode of procedure for that purpose is there prescribed. The procedure prescribed in sections 3, 4, 5, and 6, by the obvious meaning and plain terms employed, is confined to cases where such changes are made for the purpose of conforming a street grade to a bridge "over railway tracks or other places," or to the approaches to such bridge. It is clear that title 3, relating specifically to street grades, and prescribing how they may be changed, has not been repealed, and that it was not intended to exclude its application to proceedings for the change of grades generally, specified in the sections of the act of 1885 last referred to.

The provision in the act of 1885, that the assessment shall not be final until confirmed by the board of public works, has no bearing upon the question here presented. The finality here contemplated relates only to the action of the municipal authorities.

Order reversed.